

**NOT FOR PUBLICATION**

FILED & ENTERED

MAR 16 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Pgarcia    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

In re:

SHAHPARAK JAHEDI,

    Debtor.

_____

SASSAN A. SALEHIPOUR

    Plaintiff,

v.

SHAHPARAK JAHEDI,

    Defendant.

**Case No.: 1:13-bk-16457-MB**

**Chapter 7**

**Adv. Case No.: 1:14-ap-01003-MB**

**MEMORANDUM OF DECISION
FOLLOWING TRIAL**

On December 9, 2016, the Court conducted a trial in this adversary proceeding. William A. Francis represented plaintiff Sassan A. Salehipour ("Salehipour" or "Plaintiff"). Russell F. Behjatnia represented defendant, Shahparak Jahedi ("Jahedi" or "Defendant"), the chapter 7 debtor herein. This memorandum constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Plaintiff alleges pursuant to Bankruptcy Code section 523(a)(2) that Defendant owes a debt that is not subject to discharge, for money loaned, under "false pretenses, a false representation, or actual fraud. . . ." 11 U.S.C. § 523(a)(2)(A). For the reasons set forth herein, the Court finds that Plaintiff has met his burden and is entitled to judgment on this cause of action.

## I.    JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a). This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J), and this Court has the constitutional authority to enter a final judgment on the Complaint. *Stern v. Marshall*, 131 S. Ct. 2594 (2011).

## II.    PROCEDURAL HISTORY

On October 8, 2013, Defendant filed her voluntary petition under chapter 7 of the Bankruptcy Code. On November 11, 2013, the chapter 7 trustee filed his "no-asset" report. On January 7, 2014, Plaintiff commenced this adversary proceeding by filing a complaint against Defendant. On March 26, 2014, Plaintiff filed his first amended complaint, which is the operative complaint herein. Adv. Dkt. 12 (the "Complaint").

The Complaint asserted two causes of action: (i) an objection to discharge under Bankruptcy Code section 727, and (ii) a claim for determination of a nondischargeable debt under Bankruptcy Code section 523. The cause of action under section 727 was dismissed by order of the Court on June 11, 2014. Adv. Dkt. 20. Thus, the only remaining claim is Plaintiff's claim under section 523.

On June 22, 2016, the parties entered into their Second Amended Pre-Trial Stipulation. Adv. Dkt. 51. On June 24, 2016, the Court entered its order approving that stipulation. Adv. Dkt. 52.

The Court held a trial on December 9, 2016.  At trial, Plaintiff called himself and Defendant as witnesses.  Defendant called herself and Plaintiff as witnesses, as well as Mr. Kamran Khavarani.  Each party was given the opportunity to cross-examine the other party's witnesses and did so.  The Court had the opportunity to observe each of the witnesses and their demeanor, consider their testimony, and assess their credibility.  The Court admitted Plaintiff's exhibits numbered 1 through 8, and Defendant's exhibits lettered A through D.  The cause of action asserted in this adversary proceeding is now ripe for decision.

### III.    FACTS

Plaintiff, a geotechnical engineer, and Defendant, a construction consultant, met each other in late 2011 and thereafter developed a romantic relationship.  Before long, Plaintiff moved in with Defendant.  In May or June of 2012, Defendant asked Plaintiff to loan her $10,000.   As an inducement to making the loan, Defendant represented to Plaintiff that she owned substantial gold jewelry and over 40 gold coins, maintained in Tehran, Iran, which she would retrieve and liquidate if necessary to repay him.  Defendant represented to Plaintiff that she came from a wealthy family, that she and her family owned certain real estate in Tehran, and that she had adequate property from which she could repay the debt, if she could not do so from her earnings here in the United States.  Defendant represented to Plaintiff that if she was unable to repay the debt from her earnings, she would travel to Tehran, obtain the necessary property, and liquidate that property to repay the debt.  Based on these representations, Plaintiff agreed to loan Defendant the $10,000 she requested, and caused his wholly owned corporation, Sassan Geosciences, Inc. ("SGI"), to advance those funds.  *See* Trial Exhibit 2.  Plaintiff prepared a promissory note in connection with this loan, but Defendant did not sign the note.  *See* Trial Exhibit 1.

In late November or early December of 2012, Defendant asked Plaintiff to loan her an additional $10,000.  Defendant reiterated her representations regarding the Iran-located assets available to satisfy the debt and her willingness, if necessary, to travel to Iran to obtain and liquidate those assets to repay the Plaintiff.  Based on these representations, Plaintiff agreed to loan Defendant an additional $10,000 and again caused SGI to remit the funds to Defendant.  *See* Trial Exhibit 4.

In connection with this advance, Defendant signed a promissory note in favor of Plaintiff for $20,000, accounting for both of the $10,000 advances (the "Promissory Note"). *See* Trial Exhibit 3.[1]  The Promissory Note provided for the repayment of $22,666.72 in principal and interest, in 16 monthly installments of $1,416.67, beginning on August 1, 2012 and ending on December 1, 2013.  The Promissory Note also provided for the payment of attorneys' fees, costs and expenses incurred in the collection or enforcement of the note.  Additionally, Defendant signed a handwritten "addendum" to the promissory note, dated December 3, 2012 (the "Addendum"). *See* Exhibit 5.  The addendum provides that if Defendant's salary increased she would effectuate payment earlier than set forth in the note, and that if her financial situation did not improve by August of 2013, she would travel to Iran to obtain the funds necessary to repay Plaintiff.

Defendant testified at trial that she did not come from a wealthy family in Iran, did not own gold coins maintained in Iran, and did not have any real estate holdings in Iran.  Defendant, however, denied at trial that she ever made such representations to Plaintiff or induced him to loan her money.  Defendant acknowledged that she received $20,000 from Plaintiff's wholly-owned corporation, SGI, but claimed the money was not a loan.  Instead, Defendant testified that the $20,000 in advances constituted payment for management services she provided to Plaintiff in connection with the remodeling of his home in La Cañada, California.

The Court finds that Defendant's testimony was not credible and rejects her version of events.[2]  At the time she filed her bankruptcy case, Defendant filed her Schedules of Assets and Liabilities, which she declared under penalty of perjury were "true and correct to the best of [her] knowledge, information and belief."  *See* Case Dkt. 1 at 10-29.  In Schedule F, the Schedule of

---

[1] The executed promissory note admitted as Trial Exhibit 3 is dated July 1, 2012, but Plaintiff's testimony was that Defendant signed this note on or around December 3, 2012, at the time the second $10,000 advance was delivered.  Plaintiff testified that he drafted this note by revising a prior version of the unsigned note he had created to document the first $10,000 loan, but that he neglected to change the date.  The Court found Plaintiff's testimony on these issues credible.

[2] Conversely, the Court finds that Plaintiff's testimony was credible.

Creditors Holding Unsecured Nonpriority Claims, Defendant listed Plaintiff as the holder of a

disputed claim for a "Loan" in the amount of $20,000, in addition to $93,000 in personal loans

given to Defendant by other gentlemen.  When asked to explain why she had characterized the debt

to Plaintiff as a loan in her schedules—given her position at trial that the $20,000 was paid to her as

compensation—she gave an explanation that was neither coherent nor credible:

> A:  [I] never received this money as gift or as a loan.

> Q:  Then why did you report to the court that it was a loan on your bankruptcy schedule?

> A:  Because he indicated that I'm – that he is in the middle of the divorce with his second wife and there is a million something dollar has been transferred from his account to China and this money has been returned back, is in the custody of court, and he cannot have any transaction on his personal account and that's why he cannot shows any money under his personal account.  And he asking me for my paperwork, just give me some note that I loan you this money that I can completely show it as a loss for my business.

Trial Transcript at 36:15-37:1; *see also id.* at 37:9-37:15 ("Q: [I] said what you then agreed to do

was to report to the court some fictitious statement about that you had gotten a loan from him; is

that correct?  A:  Not fictitious.  He told me that I can give you this money from my business, but I

cannot shows from my personal account.  That's why I'm going to show it as did my paperwork

that I loan this money to you.")

In other words, Defendant's explanation for listing a disputed loan in the schedules—and

for the existence of "paperwork" documenting a loan in favor of Plaintiff—was that she was trying

to accommodate Plaintiff in connection with his pending divorce.  But the explanation makes no

sense.  Plaintiff's inability to use a personal account (or his preference not to use such an account)

may explain why Plaintiff caused his wholly owned corporation to disburse $20,000 to Defendant

from a corporate bank account.  It does not explain, however, why Plaintiff would insist on

disguising an employment arrangement between the parties so that it would appear to be personal

loan.  Regardless of whether the payments were compensation for services rendered or a personal

1  loan, the money was disbursed from SGI's account (not Plaintiff's personal account) and ostensibly

2  could be characterized as an expense of SGI.[3]

3       Similarly, the Court was not impressed with Defendant's attempt to disavow the

4  instruments that evidence Defendant's debt in favor of Plaintiff—instruments that were credibly

5  authenticated by Plaintiff.  For instance, Defendant acknowledged her signature on the second page

6  of the two-page Promissory Note, and acknowledged signing loan documentation at Plaintiff's

7  request, but claimed that she did not recall having seen the first page of the two-page Promissory

8  Note.  *See* Trial Transcript at 35:4-35:8; 37:16-37:24; 49:4-49:8, 51:3-51:5.  Defendant made no

9  attempt to explain (i) why she might have signed the second page of the Promissory Note if she had

10  not reviewed the first page of that instrument, (ii) why she might have signed the second page of

11  the Promissory Note (which clearly references the making of a loan) if she did not intend to

12  become indebted to Plaintiff thereunder, or (iii) if she believed any terms on the first page of the

13  Promissory Note had been altered from the version she signed, what those terms might have been.

14  Under these circumstances, the Court did not find Defendant's attempt to disavow the authenticity

15  of the Promissory Note credible or persuasive.

16       Likewise, the Court was not impressed Defendant's attempt to disavow the authenticity of

17  the Addendum.  Plaintiff credibly testified that Defendant originally drafted this document in

18  Persian, but at Plaintiff's request Defendant redrafted it in English and signed it.  Trial Transcript at

19  27:6-28:12.  In contrast to Plaintiff's testimony, Defendant's equivocal and inconsistent testimony

20  regarding the hand-printed text of the note and signature on the note was not persuasive.  *See* Trial

21  Transcript at 35:13-35:20 ("Q: Is it your printing?. . . A: I cannot recall."), 35:11-35:12 ("Q: Is it

22  your signature?  A: Looks like, but I'm not sure."); 37:20-37:22 ("A: Sir, Exhibit 5, it's not my

23  handwriting. . . . Q: But it is your signature; isn't that true?  A: I'm not sure."); 40:6-40:9 ("Q.  And

24  ask you again is that your signature to the document?  A.  It's look like my signature, but I cannot

25  

26  [3]  This Court makes no determination whether the disbursement of $20,000 from SGI's account to Defendant properly may be treated as an expense of SGI for tax purposes or any other purpose. The point is simply that the Court rejects Defendant's attempt to explain why Plaintiff would want

27  to disguise an employment relationship as a personal loan.

28

1   tell you hundred percent is my signature."); 40:10-40:11 ("Q.  And – okay.  And the printing that's

2   on the document –  A.  It's not mine").  The Court finds that Jahedi signed the Addendum, which

3   further undermines the narrative she offered suggesting the $20,000 was compensation for

4   employment rather than a personal loan.

5        In support of her contention that the payment was compensation for employment,

6   Defendant pointed at trial to (i) the issuance of an IRS Form 1099 by SGI to Defendant describing

7   the $20,000 in disbursements as "nonemployee compensation," see Trial Exhibit A, and (ii) the

8   notation of Defendant's name and telephone number for contact purposes on various invoices

9   issued by suppliers and contractors in connection with the remodeling of the Plaintiff's home.  *See*

10  Trial Exhibit B.  But the Court did not find either of these items of evidence persuasive.  First,

11  Plaintiff testified that the staff of his company processes approximately 80 of these forms every

12  year, and that he was not aware that an IRS Form 1099 had been issued to Defendant until the issue

13  arose in this adversary proceeding.  Plaintiff testified that Defendant had not provided any services

14  to his wholly-owned company and that the IRS Form 1099 had been issued in error.  The Court

15  found this testimony credible.

16       Second, after reviewing Trial Exhibit B, and considering the related testimony, the Court

17  concludes that the presence of Defendant's name on various invoices relating to Plaintiff's home

18  remodel does not evidence an employment relationship.  The presence of Defendant's name and

19  phone number on several of these invoices does evidence some involvement by the Defendant in

20  the Plaintiff's remodeling efforts.  But nothing about this evidence compels the conclusion that

21  Defendant was *employed* by Plaintiff.  The invoices suggest that  Defendant assisted the Debtor

22  from time to time in selecting materials and dealing with suppliers.  But the Court is not persuaded

23  that this involvement was anything more than the sort of assistance one partner in a romantic,

24  cohabiting relationship might provide the other partner.

25

26

27

28

                                         6

## IV.    LEGAL ANALYSIS

The creditor-plaintiff bears the burden of proof by a preponderance of the evidence on a cause of action under Bankruptcy Code section 523(a).  *Grogan v. Garner*, 498 U.S. 279, 287 (1991).  Bankruptcy Code section 523(a)(2)(A) excepts from discharge a debt obtained by "false pretenses, a false representation, or actual fraud*,* other than a statement respecting the debtor's or an insider's financial condition."

To prove a claim under section 523(a)(2)(A), Plaintiff must show: (1) that the debtor made the representations other than a statement respecting the debtor's or an insider's financial condition; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained alleged loss and damage as the proximate result of such representations. *In re Diamond*, 285 F.3d 822, 827 (9th Cir. 2002) (citations omitted).[4]  A creditor's reliance on a debtor's misrepresentation need be only justifiable, not reasonable, to satisfy section 523(a)(2)(A). *Field v. Mans*, 516 U.S. 59, 73-75 (1995).

Plaintiff has met his burden of proof to establish all of these elements.  Defendant represented to Plaintiff that (i) she owned substantial gold jewelry and over 40 gold coins, maintained in Tehran, Iran, which she could retrieve and liquidate if necessary to repay him; (ii)  she came from a wealthy family, with whom she owned real estate in Tehran that also could be used to repay the debt;  and (iii) if she was unable to repay the debt from her earnings, she would travel to Tehran and liquidate the necessary property to repay the debt.  Defendant made these

---

[4]    The United States Supreme Court recently issued its decision in *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581 (2016) holding that the term "actual fraud" under section 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation.  However, this Court need not make a determination under *Husky Int'l Elecs., Inc.* because Plaintiff's claim under section 523(a)(2)(A) is based on alleged false representations and does not allege other forms of fraud as contemplated by *Husky Int'l Elecs., Inc.*

1   representations prior to receiving the first $10,000 loan from Plaintiff, and then made them again

2   before receiving the second $10,000 loan from Plaintiff.

3           Second, Defendant knew at the time that these statements were false.  She acknowledged at

4   trial that they were *never* true.  She did not come from a wealthy family, did not have 40 gold coins

5   in Iran, did not hold real estate in Iran, and had no intention of traveling to Iran to liquidate any

6   property in order to repay the loans she received from Plaintiff.  Trial Transcript at 29:16-30:3.

7           Third, Defendant had the intention and purpose of deceiving Plaintiff, because the

8   statements were intended to induce Plaintiff to make the loans.  There was nothing accidental or

9   inadvertent about these statements.  Defendant made these representations to allay Plaintiff's

10  concerns about being repaid.

11          Fourth, Plaintiff relied on these representations in agreeing to make the subject loans.

12  Plaintiff expressly testified that if he had known at the time that Defendant's representations were

13  not true, he would not have made the loans to her.  Trial Transcript at 16:19-17:5.  Further, the

14  Court finds that Plaintiff's reliance on Defendant's representation was justifiable under the

15  circumstances.

16          Fifth, Plaintiff sustained alleged loss and damage as the proximate result of the Defendant's

17  representations.  As a result of Defendant's representations, and in reliance thereon, Plaintiff loaned

18  $20,000 to Defendant, which has not been repaid.  Further, the assets Defendant represented were

19  available to satisfy that debt were not, in fact, available.

20          In her trial brief, Defendant contends that notwithstanding the Promissory Note and

21  Addendum, Defendant cannot be indebted to Plaintiff because the funds Defendant received came

22  from SGI.  Defendant contends that the only party that may collect against her is SGI, which is not

23  the plaintiff in this action.  The Court rejects this argument.  The Promissory Note and Addendum

24  clearly establish that Defendant is indebted to the Plaintiff.  That Plaintiff may have caused his

25  wholly-owned corporation, SGI, to satisfy his obligation to loan $20,000 to Defendant is of no

26  moment.  Whatever rights SGI and Plaintiff may have against each other on account of the $20,000

27  in advances SGI made on Plaintiff's behalf, Defendant's debt is owed to Plaintiff, who is the

28  express beneficiary under the Promissory Note and Addendum.

## V.   CONCLUSION

For all of the foregoing reasons, the Court will enter judgment in favor of Plaintiff for (i) $22,666.72, the amount of principal and interest due under the note as of December 1, 2013, (ii) such amount of prejudgment interest as Plaintiff may demonstrate an entitlement, and (iii) such amount of attorneys' fees and expenses as Plaintiff may demonstrate an entitlement, pursuant to the attorneys' fee provision in the Promissory Note and applicable law.

Plaintiff shall file and serve on Defendant, not later than 21 days after entry of this Memorandum of Decision, a motion requesting determination of prejudgment interest due and attorneys' fees and expenses.  Such a motion shall include the relevant legal authority and evidence of the fees and expenses incurred.  Defendant shall file and serve on Plaintiff, no later than 14 days after the filing and service of Plaintiff's motion, any opposition to such motion.

###

Date: March 16, 2017

Martin R Barash
United States Bankruptcy Judge